**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE**

CIVIL ACTION NO. 04-441-DLB

JEFFERY DAMRON                                                              PLAINTIFF

vs.                        **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                    DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Jeffery Damron filed an application for supplemental security income (SSI) payments on April 2, 2001.[1] His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on January 29, 2003, in Prestonsburg, Kentucky. On May 5, 2003, ALJ James Kemper issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for further review by letter dated October 15, 2004. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's

---

[1] As noted by the ALJ in his written decision, Plaintiff previously filed an application for SSI. That application was dismissed on January 6, 1998, due to abandonment of his request for a hearing.

1

claim.

Plaintiff, who was 29 years old at the time of the hearing, has an eleventh grade education and alleges an inability to work beginning on October 31, 1999 due to "nerves."[2] At the hearing before the ALJ, Plaintiff testified that he is fidgety and confused all the time; he has problems with his back, shoulders, and chest; he suffers from asthma; and he has a history of substance abuse.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on December 13, 2004. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II. DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even

---

[2]In a subsequent disability report, Plaintiff complained of: upper and lower back pain, permanent (right) cracked hip, pain and stiffness in his neck, pain in his left leg and foot, arthritis, eye problems, ear problems including tubes in one ear, shortness of breath and difficulty breathing, heart problems including high blood pressure and chest pains, circulation problems, kidney problems, nerve problems including depression and anxiety, poor memory, chronic pain including muscle spasms, chronic fatigue and insomnia, and chronic headaches. (Tr. 103).

if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. 16). At Steps 2 and 3, the ALJ found that Plaintiff's borderline intellectual functioning and anxiety constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17-18). At Step 4, the ALJ found that Plaintiff has no exertional limitations, but is moderately limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and interact appropriately with the general public. (Tr. 19). The ALJ also found, however, the Plaintiff is able to understand, recall, and complete routine tasks without excessive productivity demands. (Tr. 19).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a car painter. (Tr. 19). At Step 5, however, the ALJ found that there are a significant number of jobs at all exertional levels that Plaintiff can perform, including warehouse laborer, custodian/janitor, groundskeeper, household cleaner, machine tender, and production helper. (Tr. 20). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ's credibility assessment is not supported by substantial evidence. In support, Plaintiff relies on Social Security Ruling 96-7p, which outlines the proper framework for evaluating a claimant's statements about pain or other symptoms and assessing a claimant's credibility. Specifically, Plaintiff alleges that the ALJ erred in: 1) disregarding his statements solely because they were not substantiated by objective medical evidence, 2) failing to provide specific reasons for his credibility finding in his written decision, and 3) making a conclusory statement that "the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." In response, the Commissioner argues that: 1) Plaintiff failed to offer objective medical evidence confirming the severity of his alleged symptoms, and 2) the record, as a whole, does not indicate that Plaintiff's conditions were of disabling severity. For the reasons that follow, the Court concludes that the ALJ's assessment of Plaintiff's credibility complied with the regulatory framework, and is supported by substantial evidence.

In evaluating complaints of pain, an ALJ may properly consider the credibility of the

4

claimant. *See Walters v. Comm'r of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997) (quoting *Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983)). An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *See Villarreal v. Sec'y of Health and Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See Beavers v. Sec'y of Health, Educ. and Welfare,* 577 F.2d 383, 386-87 (6th Cir. 1978).

A claimant's statements about his pain or other symptoms will not, alone, establish that he is disabled. *See* 20 C.F.R. § 416.929(a). Consistent with the regulations, the Sixth Circuit has developed the following two-prong test to evaluate a claimant's assertions of disabling pain:

> First, [the court] examine[s] whether there is objective medical evidence of an underlying medical condition. If there is, [the court] then examine[s]: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health and Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986). The regulations state that if disabling severity cannot be shown by objective medical evidence alone, the ALJ will also consider other factors, including but not limited to, daily activities and the type and dosage of medication taken. *See* 20 C.F.R. § 416.929(c)(3). In so doing, the ALJ has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. *See Bradley,* 862 F.2d at 1227. The absence of sufficient objective

5

medical evidence makes credibility a particularly relevant issue, and in such circumstances, a reviewing court will generally defer to the ALJ's assessment when it is supported by an adequate basis. *See Blacha,* 927 F.2d at 230.

After determining that Plaintiff had not engaged in any substantial activity since his alleged onset date, the ALJ expressly noted that he was required to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, and Social Security Ruling 96-7p." (Tr. 16-17). In determining his residual functional capacity (RFC), the ALJ summarized Plaintiff's own statements regarding his pain as follows:

> At the hearing, the claimant admitted that he has not been in treatment [for his nerves] since 2001 and that he never filled his prescriptions. He complained of feeling fidgety and confused for two-three days out of a week.
>
> Regarding his back problem, he stated that his back constantly hurts and his chest hurts. He takes Tylenol and aspirin which helps him with headaches. He stated he can not sit for any significant period. He can only stand for 20-30 minutes and can lift two gallons of milk.
>
> He also complained of asthma with chest pain but does not take any medication. He smokes two packs of cigarettes a day and uses an inhaler at times. In a typical day he performs his personal chores and watches television. He attends church regularly on Sunday.
>
> I find the claimant's subjective complaints are not credible because they are not supported by the medical records. There is no objective medical evidence to show the claimant has any severe physical impairment. In fact, he only takes Tylenol or aspirin for pain. Therefore I find he does not have a severe back impairment, severe asthma or severe chest pain.

(Tr. 19).

In this case, Plaintiff's medical records contain little, if any, objective medical evidence that establishes the existence of a physical impairment.[3] Records from Pikeville Methodist Hospital reveal that Plaintiff was involved in a motor vehicle accident in March 8, 1995. (Tr. 337).[4] He presented to the emergency room complaining of pain in his right forearm, lower back, and right leg, and an abrasion to his right eye. (Tr. 337). X-rays of Plaintiff's cervical and lumbar spine, however, were negative for any fracture. (Tr. 338).[5] During a consultative physical examination performed on March 2, 2002, Plaintiff also complained of back pain. (Tr. 197-98). The examiner, however, failed to identify any exertional limitations. (Tr. 199).

The evidence relating to Plaintiff's asthma and chest pain is equally scant. Consultative examiner Rita Ratliff noted that Plaintiff had been hospitalized for chest pains on two different occasions. Records from Pikeville Methodist reveal that Plaintiff was presented to the emergency room complaining of mid-sternal chest pain on September 28, 1992. (Tr. 359). A chest x-ray performed that same day was normal. (Tr. 359).[6] Plaintiff was admitted to Pikeville Methodist for chest pains again on October 10, 2001. (Tr. 255-68). An initial chest x-ray was normal. (Tr. 265). Dr. Malik, a cardiologist, ordered an echocardiogram, which revealed no evidence of significant pericardial effusion and mild

---

[3]The Court notes that, with respect to his physical impairments, Plaintiff has failed to offer any evidence from a treating physician. In fact, the only evidence of his back pain, asthma, and chest pain came in the form of emergency room records.

[4]Plaintiff has been involved in multiple motor vehicle accidents.

[5]X-rays taken one year earlier were also negative. (Tr. 340).

[6]X-rays were also taken of Plaintiff's chest when he was admitted following his motor vehicle accident in March 1995. These, too, were normal. (Tr. 338).

7

mitral insufficiency. (Tr. 262-63). Dr. Malik opined that Plaintiff's chest pain was musculoskeletal in origin. (Tr. 256). Dr. Ratliff, however, opined that his chest pain was most likely of gastrointestinal etiology. (Tr. 199).

Based upon this evidence, the ALJ properly concluded that Plaintiff's physical impairments are not severe. In reaching that conclusion, the Court notes that the ALJ relied not only on the objective medical evidence presented, but the other factors listed in 20 C.F.R. § 416.929(c)(3), such as the type of medication Plaintiff had taken (Tylenol and aspirin) and his daily activities (personal chores, attending church, etc.). Under these circumstances, the Court concludes that the ALJ followed the appropriate legal framework, and considered all the relevant medical and other evidence of record, in determining that Plaintiff's subjective complaints of pain were not credible. Plaintiff's argument to the contrary is without merit.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #13) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 14th day of March, 2006.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-441-DamronJefferyMOO.wpd